```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA,                              :
                                                       :     MEMORANDUM AND ORDER
            -against-                                  :     19-cr-460 (DLI)
                                                       :
ANTHONY RODRIGUEZ,                                     :
                                                       :
                        Defendant.                     :
-------------------------------------------------------x
```

**DORA L. IRIZARRY, United States District Judge:**

Defendant Anthony Rodriguez ("Defendant") is charged by indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Indictment, Dkt. Entry No. 6. Defendant moved to suppress post-arrest statements allegedly obtained in violation of his Fourth and Fifth Amendment rights. *See*, Defendant's Mot. to Suppress ("Def.'s Mot."), Dkt. Entry No. 23. The Government opposed the motion. *See*, Government's Opposition ("Gov't. Opp."), Dkt. Entry No. 25. Defendant did not reply.

A suppression hearing was held on May 26, 2021. After the hearing was concluded, the parties submitted additional briefs. On June 23, 2021, Defendant filed its post-hearing brief. *See*, Def's Post-Hr'g Br., Dkt. Entry No. 49. The Government filed its opposition to the post-hearing brief on July 9, 2021. *See*, Govt.'s Post-Hr'g Br., Dkt. Entry No. 50. Defendant replied on July 21, 2021. *See*, Def's Post-Hr'g Reply, Dkt. Entry No. 51. For the reasons set forth below, Defendant's motion is denied in its entirety.

**I.     Findings of Credibility**

At the suppression hearing, the Government presented testimony from two law enforcement officers, Federal Bureau of Investigation ("FBI") Task Force Officer Kevin Tagnosky ("TFO Tagnosky") and Special Agent Laejon Brooks ("SA Brooks") of the Bureau of Alcohol,

Tobacco, Firearms and Explosives ("ATF").  At the time of the hearing, TFO Tagnosky had been a detective with the New York City Police Department ("NYPD") for over thirteen years and was assigned to the Joint Terrorism Task Force ("JTTF").  Suppression Hearing Transcript, May 26, 2021 ("Tr."), Dkt. Entry No. 52, at 10:7-23.  At the time of the hearing, SA Brooks had been a Special Agent with the ATF for over four years and was assigned to the Newark Field Division Group 1.  *Id*. at 96:15-18.  Before that Brooks had been assigned to the Joint Firearms Task Force Group 2 in New York.  *Id*. at 79:2-4.  The Court finds both witnesses credible.

Defendant neither testified at the suppression hearing nor presented evidence.  Defendant attached to his suppression motion his affidavit detailing his version of events at issue, the Report of Investigation concerning Defendant's arrest on August 26, 2019, the Advice of Rights and Waiver signed by Defendant, and the Laboratory Report from the Office of Chief Medical Examiner ("OCME Report") showing the results of the DNA testing conducted on the subject weapon.  *See*, Def. Aff., Ex. 1, Dkt. Entry No. 23-1.  As Defendant did not testify and the contents of the affidavit were not subject to cross-examination, the Court does not consider Defendant's conclusory and self-serving affidavit.  Nor will the Court consider any other documents or other evidence not admitted into evidence at the hearing.

## II.     Findings of Fact

Defendant's arrest stems from a long-term investigation of a mass shooting that occurred during the summer of 2019 in the Brownsville section of Brooklyn, New York.  Tr. At 11:23-12:2.  During the course of the investigation, a firearm was recovered; ballistics connected the firearm to the shooting and DNA on the firearm was a match to Defendant.  Tr. at 12:13-23, 13:1-15.

On August 26, 2019, Defendant was at the state parole office in Brooklyn for a scheduled appointment.  Tr. at 14:5-17.  A warrant for Defendant's arrest had been issued that day for a

parole violation. *See*, Government Exhibit ("Gov't. Ex.") 1; Tr. at 15:4-17:4-13. New York State Parole Officer Ramirez ("PO Ramirez"), who also worked with TFO Tagnosky in the JTTF, informed TFO Tagnosky of Defendant's parole violation and resulting arrest by the New York Department of Corrections and Community Supervision ("DOCCS") and accompanied TFO Tagnosky and SA Brooks to the parole office. Tr. at 14:18-25, 45:12-47:2 and 80:13-24.

Upon arriving at the parole office, TFO Tagnosky and SA Brooks introduced themselves to Defendant "and asked if he wouldn't mind being moved back to the ATF office" for further questioning. Tr. at 49:17-24. Defendant agreed. *Id*. at 15:16-25. TFO Tagnosky and SA Brooks then escorted Defendant to the ATF office located in Manhattan, New York. *Id*.

Defendant was escorted to an interview room and the equipment for recording the interview was turned on by TFO Tagnosky. Tr. at 19:16-19. Approximately four (4) minutes into the interview, in the presence of TFO Tagnosky, SA Brooks read Defendant his *Miranda* rights and gave him a statement of rights and waiver form. Tr. at 22:6-25, 30:8-24 and 82:14-23. Defendant signed the waiver form twice. Tr. at 22:23-25, 31:13-19; *See*, *Miranda* Rights Form Signed by Defendant, Gov't. Ex. 2; Tr, 23-25:1-7. As part of those rights, Defendant was asked whether he was willing to speak to the agents without an attorney present and Defendant responded "yes." Tr. at 22:17-22. At no time during the interview did the Defendant ever say anything regarding speaking with an attorney. Tr. at 26:3-6. Defendant never said anything during the interview about retracting or withdrawing his waiver of rights. Tr. at 26:7-10. At no time during the interview did any officer physically restrain or threaten Defendant.[1] Nor did Defendant ever withdraw his waiver of rights or request to speak with an attorney during the interview with NYPD Brooklyn North Homicide detectives. Tr. at 32:21-25-33:1-2.

---

[1] Defense counsel noted on the record at the hearing that there is no allegation that Defendant was beaten. Tr. at 33:24-25.

3

Defendant was questioned first by TFO Tagnosky and SA Brooks, and then by members of the NYPD Brooklyn North Homicide squad. Tr. at 31:20-32:20. When the ATF agents interviewed Defendant, the NYPD officers were able to observe and hear the interview from an adjacent room, and *vice versa*. Tr. at 31:20-32:20 and 87:5-15. Defendant was interviewed for a total of about two hours. *Id*. at 94:1-95:8. Unbeknownst to TFO Tagnosky and SA Brooks at the time of the interview, the recording equipment had been installed incorrectly resulting in a video recording of the interview without any audio. Tr. at 20:7-21:15, 34:9-12, 37:12-20 and 81:11-82:13.

Before beginning the interview, TFO Tagnosky entered the interview room, "activated the [recording] system, [and] saw that the red light [for recording] had illuminated." Tr. at 21:5-15. A "red wheel indicating that it was recording" was visible in the witness room. *Id*. TFO Tagnosky learned of the missing audio days after the interview when he attempted to create a copy of the recording to turn over to the court. Tr. at 20:23-21:2. TFO Tagnosky explained that Defendant's interview was the first time the interview space had been used because the ATF recently had moved their central location from Brooklyn to Manhattan. Tr. at 21:5-15. TFO Tagnosky and SA Brooks were the first people to use the new recording equipment. Tr. at 21:6-8, 89:10-25. Upon noticing the missing audio, TFO Tagnosky called ATF headquarters in Washington D.C. to request that a technician come to their office to investigate and one was sent directly. Tr. at 21:11-14. After the technician completed the investigation, TFO Tagnosky was informed that "[the recording device] wasn't plugged in properly" when installed. Tr. at 21:5-15; 66:5-68:9; 81:11-82:13; 88:11-91:23. TFO Tagnosky testified that, since he could hear the interview from the observation room and the red recording light was on, he had no reason to suspect that the recording equipment was not working at the time of the interview. Tr. at 36:25-37:1-11. In addition, TFO Tagnosky had

4

checked the equipment before beginning the interview, but only became aware that the audio portion was not recorded when he tried to download the file, which he had to be "walked through" by a technician in Washington, D.C. because he did not how to do it. Tr. at 37:12-20.

Upon conclusion of the interview, Defendant was taken to the Brooklyn Detention Center where PO Ramirez lodged Defendant pursuant to the New York State Parole arrest warrant. Tr. at 70:5-16 and 71:4-14.

### III.   Conclusions of Law

#### A.   Motion to Suppress Evidence

Defendant argues that the statements made at the ATF office should be suppressed as they were elicited in violation of Defendant's Fourth and Fifth Amendment rights. Def.'s Post-Hr'g Br. at 1. Specifically, Defendant contends that the agents did not have either probable cause or an arrest warrant when they took Defendant to the ATF office for questioning; thus, any statements obtained from Defendant are fruits of the poisonous tree. *Id*. at 5-6. Defendant further alleges that the statements were elicited in violation of his rights under the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1996) because he requested an attorney several times while in custody at the ATF office, but none was provided. *See generally*, *Id.*

The Government counters that there is no Fourth Amendment violation here because Defendant already was under arrest by DOCCS for violating parole. *See*, Govt's Post-Hr'g. Br. at 4-5; Tr. at 15:4-17:13; 69:24-71:14; 80:13-21. Regarding Defendant's rights under *Miranda*, the Government argues that Defendant "knowingly and voluntarily waived his *Miranda* rights, including his right to a lawyer, when he signed the waiver form" and did not revoke this waiver nor invoke his right to counsel during the interview. *See*, Gov't. Opp. at 9. The Court concurs

with the Government and, for the reasons set forth below, Defendant's motion to suppress his post-arrest statements is denied.

### B. Fourth Amendment Claim

"It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates his Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (citations and emphasis omitted). When considering a claimed violation of Fourth Amendment rights, the burden is on the defendant to establish that his own rights under the Fourth Amendment were violated. *United States v. Paulino*, 850 F.2d 93, 96 (2d Cir. 1988). A defendant cannot show that he was deprived of liberty by law enforcement officials if he already was in custody for a separate charge. *Arnold v. Geary*, 582 F. App'x 42, 43 (2d Cir. 2014); *See*, *Walker v. Sankhi*, 494 F. App'x 140, 143 (2d Cir. 2012) ("[Defendant] could not have suffered a deprivation of liberty as a result of [a separate] charge because . . . he was already in custody, and remained in custody, for a completely separate burglary charge . . .").

The credible, undisputed evidence shows that, when Defendant was taken from the state parole office to the ATF office, Defendant already had been arrested lawfully pursuant to the DOCCS warrant. Notably, the questioning at the ATF office did serve a legitimate law enforcement purpose that did not further exacerbate Defendant's seizure. *Compare, Lauro v. Charles*, 219 F.3d 202, 216 (2d Cir. 2000) (Arrestee's Fourth Amendment rights were violated when he was taken for a "perp walk" that invaded the [arrestee's] privacy and served no legitimate law enforcement purpose). Accordingly, the questioning of Defendant at the ATF office was not an unlawful seizure violative of Defendant's Fourth Amendment rights.

C.     **Fifth Amendment/*Miranda* Claim**

"If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him." *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *North Carolina v. Butler*, 441 U.S. 369, 372-76 (1979)). "But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." *Id*. (citation omitted). In order to invoke his *Miranda* rights subsequent to waiver, a defendant must clearly and unambiguously request counsel. *See*, *Davis*, 512 U.S. at 460; *United States v. Medunjanin*, 752 F.3d 576, 586 (2d Cir. 2014).

Defendant claims he invoked his right to counsel after he signed the "advice of rights" waiver. However, there is no evidence that Defendant made any attempt to request the assistance of counsel except for his self-serving affidavit, which is not evidence and was not subject to cross-examination. Both TFO Tagnosky and SA Brooks credibly testified Defendant never requested counsel. *Id*. at 22:17-25, 26:3-10, 86:10-16, and 87:16-22. The video recording of Defendant's interview was played at the suppression hearing. *See*, Tr. at 28-41 and 85-86. The video showed law enforcement officers escorting Defendant into the interview room and TFO Tagnosky and SA Brooks entering without speaking to Defendant. Tr. at 29:4-14. The recording then shows SA Brooks reading from a document and handing the document to Defendant. Tr. at 29:22-31:16. TFO Tagnosky testified that SA Brooks read Defendant his *Miranda* rights from this waiver form and handed the form to Defendant, which he signed twice. *Id*. The remainder of the video shows Defendant never refused to respond to questions. Tr. at 28-41, 85-86.

Moreover, Defendant is familiar with the criminal justice system. The record shows, *inter alia*, that Defendant had a previous firearms conviction in 2013. "Given [Defendant's] criminal

7

record, he was sufficiently sophisticated to express his desire for a lawyer if he had wanted one." *Thompson v. Fischer*, 2003 WL 23198787, at *16 (E.D.N.Y. Oct. 31, 2003).

"Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). "Such a waiver must be voluntary in the sense that it was the product of a free and deliberate choice. . . and must be knowing, in the sense that it was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. O'Brien*, 926 F.3d 57, 73 (2d Cir. 2019) (internal quotations and citations omitted). "In general, a suspect who reads, acknowledges, and signs an 'advice of rights' form before making a statement has knowingly and voluntarily waived *Miranda* rights." *United States v. Taylor*, 745 F.3d 15, 23 (2d Cir. 2014) (citing *United States v. Plugh*, 648 F.3d 118, 127-28 (2d Cir. 2011)). The hearing testimony, along with the interview video and the *Miranda* waiver signed by Defendant clearly establish that Defendant was advised of his *Miranda* rights. Defendant does not dispute that he signed the *Miranda* waiver form. However, Defendant claims that he asked for an attorney several times during the interview after he signed the waiver form. Defendant's bald and unsupported claim is disputed by the uncontradicted witnesses' credible testimony and the interview video.

Defendant further maintains that it "cannot [be] determined whether [Defendant] knowingly and voluntarily waived his *Miranda* rights because the Government has failed to produce and preserve evidence," *i.e.*, the audio portion of the recording, thereby failing to satisfy the requirements of Federal Rule of Criminal Procedure 16(a)(1)(B) ("Rule 16(a)(1)(B)"). Defendant's contention has no merit and is unsupported by the evidence.

TFO Tagnosky explained that he and SA Brooks were the first agents to use the interview room and newly installed recording equipment in their new central offices in Manhattan. The Court finds that TFO Tagnosky took reasonable and diligent steps, under the circumstances, to assure himself that the recording equipment was working. The red recording light was on and he and the other officers could hear everything that was said in the interview room from an adjacent observation room. It was not until TFO Tagnosky tried to download the file to make a copy of the interview recording that he realized there was no audio recording. TFO Tagnosky was unfamiliar with the equipment and had to be :"walked through" the download by a technician stationed at ATF headquarters in Washington, D.C. Only then did he discover the problem with the audio portion. TFO Tagnosky also acted responsibly and diligently in requesting that a technician come to their New York office to investigate the problem.

Under the totality of these facts and circumstances, the Court finds that there was no malice or wrongdoing on the part of the agents here. The lack of audio in the interview recording was an unfortunate accident and was not done intentionally to hide evidence from the defense or the Court. Notably, there was no cover up. The agents investigated immediately and disclosed the issue promptly. As such, the Court finds no merit to defendant's claim that the agents tampered with the recording or willfully failed to preserve the evidence as required by Federal Rule of Criminal Procedure 16(a)(1)(B). Therefore, Defendant's motion is denied on that ground.

Based on the totality of the circumstances presented here by the credible and undisputed evidence, the Court finds that the Government has satisfied its burden by more than the preponderance of the evidence that Defendant's Fifth Amendment rights were not violated as he knowingly and voluntarily waived his right to counsel and never clearly and unambiguously requested counsel after waiving his rights.

**IV.    Conclusion**

For the foregoing reasons, Defendant's motion to suppress his post-arrest statements is denied in its entirety.

SO ORDERED.

Dated:  Brooklyn, New York
       August 20, 2021

/s/
DORA L. IRIZARRY
United States District Judge
